Joshua G. Harris
94 Elgas St
Buffalo, NY 14207
716.598.0150
Joshua.Harris14217@gmail.com   .



# UNITED STATES DISTRICT COURT WESTERN DISTRICT

|  |  |
|---|---|
| JOSHUA G. HARRIS, | Case No.: Number |
| Plaintiff, | |
| vs. | # 19  CV 633∨ |
| LIEUTENANT MARK SWAGGARD, P.O. TOM FEENEY, P.O OMAR TIRADO, P.O J. BONNOR, P.O K. CARTER, BUFFALO POLICE DEPARTMENT, CITY OF BUFFALO | CIVIL COMPLAINT |
| Defendants | |

## PARTIES

1.  Plaintiff, JOSHUA G. HARRIS, for religious reasons, also goes by the

name The Blue Raven (hereinafter "PLAINTIFF") was one of the people of

the Village of Kenmore, from which at the time of the incident was residing

at the address of 321 Crosby Avenue, in the Village of Kenmore, County of

Erie, in the Republic of New York State, 14217, which he has recently

moved to 94 Elgas Street, in the City of Buffalo, in the Republic of New York State, 14207.

2.     Upon information and belief, at all relevant times stated herein, Defendant CITY OF BUFFALO is a municipal corporation organized and existing under the laws of the State of New York and the United States Constitution, with principal offices at 65 Niagara Square, in the City of Buffalo, County of Erie, State of New York.

3.     Upon information and belief, at all relevant times stated herein, Defendant CITY OF BUFFALO POLICE DEPARTMENT (hereinafter "BUFFALO POLICE") is a department within Defendant CITY OF BUFFALO organized and existing under the laws of the State of New York and the United States Constitution with principal offices at 74 Franklin Street, in the City of Buffalo, County of Erie, State of New York.

4.     Upon information and belief, at all relevant times stated herein, Defendants LIEUTENANT MARK SWAGGARD (hereinafter "SWAGGARD"), POLICE OFFICER TOM FEENEY (hereinafter "FEENEY"), POLICE OFFICER OMAR TIRADO (hereinafter "TIRADO"), POLICE OFFICER J. BONNER (hereinafter "BONNER"),

AND POLICE OFFICER K. CARTER (hereinafter "CARTER") are residents of the County of Erie, State of New York.

# JURISDICTION

5.      This Court has jurisdiction over this lawsuit pursuant to the Civil Rights Act, Title 42 United States Code § 1983 on the grounds that these Defendants have exceeded their jurisdiction by injuring from the loss of the Plaintiff's guaranteed rights, which this action arises under the United vfStates Constitution, particularly under the provisions of the First, Fourth, Fifth, and Sixth Amendments.

6.      Venue also lies in this Court pursuant to Title 28 U.S.C §1331, §1343, §1367, §1391 (b), §2201 (a), and §2202.

7.      Each of the acts of Defendants SWAGGARD, FEENEY, TIRADO, BONNER, CARTER were performed in the course of their employment in concert with the Defendants, CITY OF BUFFALO and BUFFALO POLICE, under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, County of Erie, and City of Buffalo under their authority as police officers.

## JURY DEMAND

8.     Plaintiff hereby demands a trial by jury.


## ALLEGED FACTS TO ALL CLAIMS

9.     The occurrence of the incident arising from the court of record, inter alia, within

this complaint, that on June 1, 2017, the PLAINTIFF was street preaching on the

corner of West Chippewa Street and Franklin Street on or about 7:45pm.



10.     The PLAINTIFF, while he was preaching the word of God at the said

approximant location, mentioned in "paragraph 9", conversed into several different

social interactions with various citizens near and around the PLAINTIFF with his

bullhorn, including some of the patrons speaking to the PLAINTIFF over the balcony

of the bar "SOHO", located at the said corner mentioned in "paragraph 9".

11.     As the PLAINTIFF's bullhorn was pointed to the ground, the PLAINTIFF attempted to augment his speech with his bullhorn from the despotic noise from the city's ambiance.

12.     Some of the patrons over the balcony, as well as some of the citizens near and around the PLAINTIFF; did not like what the PLAINTIFF had to say regarding to the scriptures the PLAINTIFF was preaching to them.

13.     When it came to pass, a manager from the bar approached the PLAINTIFF, at the corner of West Chippewa Street and Franklin Street on or about 8:05pm.

14.     The manager told the PLAINTIFF, "Hey you have to get out of here.".

15.     The PLAINTIFF informed the manager, "No! I'm not going to get out of here."

16.     While on standing on the pubic right-a-way, the manager told the PLAINTIFF, "Um, you're standing on private property, you're trespassing.".

17.     In response to the manager's statement, the PLAINTIFF asked, "I'm trespassing? How am I trespassing on public property?".

18.     The manager continued confronting the PLAINTIFF stating that he was entitled
to his (PLAINTIFF'S) own opinions and that he, the PLAINTIFF, was bothering his
customers and that he (PLAINTIFF) should leave.

19.     The PLAINTIFF educated the manager on his constitutional rights of free speech
and that he, the PLAINTIFF refused to leave the public area.

20.     The manager then got on his phone and called the defendant, BUFFALO
POLICE.

21.     Not soon after the phone call was placed, Defendant BONNER of the Defendant
BUFFALO POLICE; arrived on the scene.

22.     Defendant BONNER greeted the PLAINTIFF, "What's up?".

23.     The PLAINTIFF in response asked BONNER, "May I help you?".

24.     BONNER answered the PLAINTIFF, "I just wanted to know, what's going on."

25.     Before the PLAINTIFF could respond, "I'm not at liberty to answer any of your
questions.", the Defendant BONNER stated, "I understand you're not breaking the
law, I know you're not breaking any laws." or words to that effect.

26.     The PLAINTIFF informed BONNER that he, the PLAINTIFF was not going to be answering any of the Defendant BONNER's questions.

27.     Defendant BONNER saluted the PLAINTIFF and left the scene.

28.     After the PLAINTIFF wished BONNER a nice day, the PLAINTIFF continued preaching the word of God.

29.     Approximately 18 minutes had passed when one of the patrons came out from the bar with his bullhorn, pointing the bullhorn towards the PLAINTIFF, and started heckling the PLAINTIFF with profanity.

30.     Defendant BUFFALO POLICE arrived once again but stood in the police cruiser during that time.

31.     Moments later, Defendant FEENEY arrived on scene.

32.     FEENEY then greeted the PLAINTIFF, informing the PLAINTIFF that he (the PLAINTIFF) was being recorded, acknowledging that the PLAINTIFF was also video recording the ensuing conversation with him.

33.     After of which FEENEY told the PLAINTIFF, "I've got tickets right here in my hand.".

34.     The PLAINTIFF responded, "So what?".

35.     Defendant answered, "So what you're doing here is that you are disturbing the peace and you're disturbing their party."

36.     The PLAINTIFF asked FEENEY to articulate what he meant by disturbing the peace.

37.     Defendant FEENEY ignored the PLAINTIFF'S request and told him that he was going to give the PLAINTIFF an opportunity to leave, otherwise he (FEENEY) was going to give PLAINTIFF a city ordinance ticket for failing to leave.

38.     PLAINTIFF again asked FEENEY to articulate the city ordinance, that he was referring to.

39.     In response to FEENEY'S threats, PLAINTIFF educated Defendant FEENEY of city ordinances regarding ambient noise and justified the PLAINTIFF'S preaching as protected activity under the city's policies.

40.     FEENEY again, informed PLAINTIFF that he (FEENEY) was recording the conversation.

41.     PLAINTIFF asked FEENEY for his badge number.

42.     In response, FEENEY ignored the PLAINTIFF'S request for his badge number by asking for PLAINTIFF'S id.

43.     PLAINTIFF asked for the reasoning behind FEENEY'S request for his (PLAINTIFF'S) id.

44.     Defendant FEENEY answered, "Well, you're disturbing the peace, disturbing their party.".

45.     In response to FEENEY'S poor articulation, PLAINTIFF educated Defendant FEENEY of city ordinances regarding ambient noise and laws via Supreme Court rulings that justified the PLAINTIFF'S preaching as protected activity under city's policies and the Constitution once again.

46.     The PLAINTIFF ensured Defendant FEENEY that he (PLAINTIFF) looked up, knowing all the laws regarding his protected activity in particular (PLAINTIFF'S) Freedom of Speech.

47.     FEENEY responded, "You looked it (the laws) up?".

48.     PLAINTIFF answered, "Yeah I looked it up, but did you look it up?"

49.     Defendant FEENEY asked the PLAINTIFF if the PLAINTIFF was "bothering" these folks (patrons at the bar) while anticipating a reaction or an answer from the patrons of the bar to answer, as he (FEENEY) glances over to them during questioning.

50.     While the PLAINTIFF answered FEENEY, "It doesn't matter if I was bothering them,", the patrons imperiously answered for the PLAINTIFF, informing Defendant FEENEY that they were being "bothered" by PLAINTIFF'S speech.

51.     Defendant FEENEY then turned to his full attention to the patrons at the bar as he asked, "Oh, He is bothering you guys? Disturbing the party?"

52.     PLAINTIFF the third time, articulated Supreme Court cases in particular, Cox vs Louisiana, that a state government cannot employ "breach of the peace" statutes against protesters engaging in peaceable demonstrations.

53.     Defendant FEENEY stated to PLAINTIFF "It doesn't matter, we've got complaints".

54.     Defendant FEENEY then attempted to manufacture and solicited probable cause by asking for the party organizer, walking away towards the patrons coming out of the bar.

55.     PLAINIFF pleaded with FEENEY, informing him, "Hecklers do not have a right to veto! Hecklers do not have a right to veto!"

56.     FEENEY then turned around and told the PLAINTIFF to shush...

57.     PLAINTIFF informed FEENEY that he does not have the right to give a lawful order to silence him (PLAINTIFF).

58.     PLANTIFF informed FEENEY that he has not committed any Disorderly Conduct.

59.     As Defendant FEENEY remained silent for the moment, one of the patrons answered, "You are committing Disorderly Conduct! We're just trying to have fun!"

60.     The PLAINTIFF responded to the patron, "And I'm trying to preach the word of God. I am in the public and you do not have the right to privacy in a public forum."

61.     FEENEY said nothing.

62.     Continuing the dialog with Defendant FEENEY, PLAINTIFF informed Defendant FEENEY that he (PLANTIFF) knows the law.

63.     FEENEY finally responded, "I'm going to ask you to leave."

64.     PLAINTIFF asked for a reason why he had to leave, seeing that he was on public property.

65.     Defendant FEENEY suggested that PLAINTIFF should go across the street to preach.

66.     PLAINTIFF refused to go across the street by telling Defendant FEENEY that he was on public property, fumbling his words from distress the PLAINTIFF almost said private property but corrected himself.

67.     FEENEY, in response, fed off the PLAINTIFF'S mistake declaring that the PLAINTIFF was on private property, as he again walks away from PLAINTIFF, towards the party organizers outside the bar.

68.     PLAINTIFF asked for badge number again, FEENEY ignored the request once more.

69.     PLAINTIFF reminded Defendant FEENEY that he was under the color of law.

70.     FEENEY responded, "Well, we have a complaint so,".

71.     PLAINTIFF answered, "It doesn't matter about your complaints. Hecklers do not have a right to veto."

72.     FEENEY then announced that PLAINTIFF has been advised.

73.     PLAINTIFF again, asked for FEENEY'S badge number.

74.     Defendant FEENEY refused to oblige to PLAINTIFF'S request.

75.     PLAINTIFF informed FEENEY that he was committing Harassment.

76.     Out of retaliatory action from PLAINTIFF'S comments, FEENEY told PLAINTIFF, "You're getting a ticket. You were asked several times to leave and you refused.".

77.     PLAINTIFF informed Defendant FEENEY that he (PLAINTIFF) was on public property and that he was going to report him for his unreasonable behavior.

78.     Defendant responded, "You're being irrational. You're leaving or your going to go to jail".

79.     PLAINTIFF asked him to repeat what he said.

80.    PLAINTIFF warned FEENEY that he was going to be sued.

81.    FEENEY stated, "You're being an obstruction of this party."

82.    Defendant FEENEY and PLAINTIFF continued to go back and forth, where PLAINTIFF wanted FEENEY'S badge number and FEENEY wanted the PLAINTIFF'S id number.

83.    PLAINTIFF informed FEENEY again that no crime has been committed and that FEENEY had no probable cause to justify such request.

84.    FEENEY stated, "Well, according to these people here, you are disturbing their party."

85.    PLAINTIFF asked, "According to these people or according to the Constitution? You are supposed to uphold and protect the law!"

86.    PLAINTIFF continued to preach after the FEENEY broke conversation while starting another conversation with a different citizen.

87.    More police cruisers arrived on the scene. Arriving on the scene were Defendants TIRADO, CARTER, and returning the second time on scene, Defendant BONNER.

88.     While the PLAINTIFF was preaching, he again; was approached by a different police officer, which was Defendant TIRADO.

89.     Defendant TIRADO interrupted PLAINTIFF'S preaching by asking, "How are you doing? What's going on today?"

90.     TIRADO claimed, "There's such a nice little party here and you are disturbing them." or words to that effect.

91.     PLAINTIFF asked how he was disturbing them.

92.     FEENEY interfered in the conversation between the PLAINTIFF and Defendant TIRADO stating to TIRADO, "He's (PLAINTIFF) harassing gays and lesbians here at the party, they said." or words to that effect.

93.     PLAINTIFF again asked for FEENEY'S badge number, while informing FEENEY that he is again harassing him (PLAINTIFF).

94.     FEENEY justified his behavior by claiming that the PLAINTIFF was harassing the citizens and patrons of the bar, that the event was a "private party".

95.     PLAINTIFF informed FEENEY again that he was on public property, regardless where and if the event is private or not.

96.     PLAINTIFF asked for Defendants TIRADO'S then FEENEY'S badge numbers.

97.     TIRADO gave his badge number, followed by FEENEY.

98.     In retaliation, FEENEY again asked for PLAINTIFF'S id.

99.     PLAINTIFF again educated FEENEY on the fourth and fifth amendments.

100.    TIRADO informed PLAINTIFF that he (PLAINTIFF) was obligated to provide
        them (TIRADO AND FEENEY) his id.

101.    PLAINTIFF again educated both FEENEY and TIRADO on the fourth and fifth
        amendments.

102.    TIRADO stated, "We've asked you nicely multiple times not to disturb these
        people."

103.    PLAINTIFF responded that he has a right to be there to preach.

104.    TIRADO informed PLAINTIFF, "You do have a right to freedom of speech, but
        you have to be quiet when they are partying," or words to that effect.

105.    PLAINTIFF demanded for a Supervisor present on scene.

106.    In retaliation, FEENEY suggested to arrest the PLAINTIFF and submit the
        PLAINTIFF'S video and bullhorn as evidence to the DA's office before the
        Supervisor shows up.

107.    Defendants BONNER and CARTER heard FEENEY'S suggestions to TIRADO
        and said and done nothing.

108.    PLAINTIFF again informed FEENEY that he is recording these proceedings and
        that he (FEENEY) was in violation of the Constitution, which he (PLAINTIFF)
        intends to sue.

109.    Defendant FEENEY responded, "Well we have given you many opportunities to
        leave and you refused to." or words to that effect.

110.    The PLAINTIFF, once again, informed FEENEY that he (PLAINTIFF) was on
        public property.

111.    FEENEY responded, "The Organizers at this event, don't want you here."

112.    PLAINTIFF informed FEENEY that it didn't matter if they wanted him
        (PLAINTIFF) there or not.

113.    Defendant FEENEY then turned to the patrons at the bar and asked, "Is he harassing you guys?"

114.    The patrons answered, "Yes, he is!" to Defendant FEENEY.

115.    FEENEY then went to say to PLAINTIFF, "See, you are. You are over-stepping their boundaries," or words to that effect.

116.    PLAINTIFF informed FEENEY that he (FEENEY) was infringing on his rights.

117.    PLAINTIFF asked if he was being detained.

118.    Defendant FEENEY acknowledged that PLAINTIFF was detained.

119.    PLAINTIFF asked on what cause was he detained.

120.    FEENEY in turned, gave PLAINTIFF an ultimatum to receive the city ordinance ticket or go to jail.

121.    PLAINTIFF once again, asked for the Supervisor.

122.    FEENEY informed the PLAINTIFF, "We don't need him."

123.    PLAINTIFF pleaded to Defendant FEENEY for a Supervisor and that he

(FEENEY) refused to get one.

124.    The PLAINTIFF while engaging a conversation with another citizen, decided to

leave the scene with the citizen.

125.    After the short conversation, the PLAINTIFF returned to the corner of West

Chippewa Street and Franklin Street.

126.    PLAINTIFF asked FEENEY for the Supervisor and that he was going to continue

to preach.

127.    FEENEY informed the PLAINTIFF that the supervisor was on the way and

suggest that PLAINTIFF would rather go across the street so he wouldn't disrupt the

party.

128.    PLAINTIFF then asked what the difference was of being 15 feet across the street

as opposed to being at the corner preaching and why wanting his id eases FEENEY'S

reasonable suspicion that a crime has been committed.

129.    Defendant TIRADO suggested to PLAINTIFF that he should rather join the very

same party which TIRADO and FEENEY claimed that the PLAINTIFF was not

allowed to be around by the Organizers of the party.

130.    PLAINTIFF informed Defendants that their suggestions made no sense, by which

he's main propose is to preach the word of God rather than joining them.

131.    PLAINTIFF asked if he was trespassing.

132.    Defendant FEENEY informed PLAINTIFF that he wasn't in fact trespassing.

133.    FEENEY informed that PLAINTIFF had a right to speak but he (PLAINTIFF)

cannot harass the customers.

134.    PLAINTIFF educated FEENEY that he was open air preaching in a public forum

which does not constitute harassing, the customers do not have the right to privacy in a

public forum.

135.    FEENEY and TIRADO insisted on suggesting PLAINTIFF into joining the party.

136.    PLAINTIFF informs Defendants FEENEY and TIRADO of his intentions at the

said corner in reference to paragraphs "13".

137.   Defendant SWAGGARD arrived at the scene asking the PLAINTIFF what the situation was.

138.   SWAGGARD then informed PLAINTIFF that he was on public property, but then afterwards informed PLAINTIFF, "I understand there is the Constitution, but within the Constitution there are 'rights' and there are 'laws' that you have to follow." or words to that effect.

139.   PLAINTIFF informed Defendant SWAGGARD that the Supreme Court cases, Cox vs Louisiana, that a state government cannot employ "breach of the peace" statutes against protesters engaging in peaceable demonstrations, and that hecklers do not have a right to veto, in regarding free speech.

140.   SWAGGARD then replied, "Within Federal Laws, there are State Laws, then there are City Ordinances. You must be aware of all of that. So, if you are blocking the sidewalk then you are committing an infraction of City Ordinance." or words to that effect.

141.   PLAINTIFF informed Defendant SWAGGARD that he (PLAINTIFF) was not blocking any traffic and that City Ordinances are not above the Supreme Law of the land.

142.   SWAGGARD stated, "The Constitution was drafted for the protection of other citizens from other citizens.", or words to that effect.

143.   PLAINTIFF then educated SWAGGARD that the Constitution was drafted to limit the abuse of power from Government, such as himself, to the people and that he (PLAINTIFF) could sue and get an injunction on the police department.

144.   Defendant SWAGGARD said, "You could sue anybody. Everybody and anybody have the right to sue everybody, that's their rights. That is up for the courts to decide.", or words to that effect.

145.   Defendant SWAGGARD then asked the PLAINTIFF what he wanted to do.

146.   PLAINTIFF told SWAGGARD that he wanted to preach the word of God right here on the corner mentioned in "paragraph 13".

147.   Defendant SWAGGARD then asked the PLAINTIFF if the pedestrians have to walk around him (PLAINTIFF).

148.   PLAINTIFF stated that he was not in the way of the pedestrians walking by.

149.   SWAGGARD then asked FEENEY for the penal code book.

150.    SWAGGARD then had PLAINTIFF read the law of Disorderly Conduct.

151.    FEENEY told Defendant SWAGGARD that the PLAINTIFF refused to give him id, afterwards SWAGGARD stated, "Now that is an arrestable offense."

152.    PLAINTIFF asked SWAGGARD what the probable cause for the police department to demand PLAINTIFF'S id.

153.    While PLAINTIFF read the law to Defendant SWAGGARD, SWAGGARD asked, "You see that right there? That says unreasonable noise." or words to that effect.

154.    PLAINTIFF then educated SWAGGARD that he was under the noise ordinance and that law does not apply to him (PLAINTIFF).

155.    SWAGGARD then wanted PLAINTIFF'S attention on a part of the law where it says annoyance.

156.    PLAINTIFF asked Defendant SWAGGARD to articulate what he means by annoyance and alarm.

157.    SWAGGARD answers, "So, you're out here with that megaphone to annoy these people who are lawfully assembled.", or words to that effect.

158.    Defendant SWAGGARD gave PLAINTIFF an ultimatum, "You can't be out here annoying people with your mega horn, so you could receive the city ordinance ticket and go about your business or go to jail.", or word to that effect.

159.    PLAINTIFF informed that SWAGGARD had a very poor articulation of the law that the PLAINTIFF just read to him.

160.    PLAINTIFF pleaded to SWAGGARD to articulate that using a bull horn was unlawful.

161.    SWAGGARD insisting on threating PLAINTIFF that he was going to be arrested if he didn't to comply to Defendant SWAGGARD unlawful order.

162.    PLAINTIFF asked Defendants SWAGGARD, TIRADO, and FEENEY for their decibel meter readers.

163.    To no avail PLAINTIFF was ignored, regarding their alleged findings of PLAINTIFF'S unreasonable noise.

164.    PLAINTIFF kept asking SWAGGARD to articulate his demand to give his id to FEENEY.

165.   SWAGGARD responded, "It's for the courts to decide. Either you are going to comply to the law or go to jail." or words to that effect.

166.   PLAINTIFF informed Defendant SWAGGARD that he (PLAINTIFF) was the one that was complying to the law and that they (SWAGGARD, FEENEY, TIRADO) were not complying to the law.

167.   SWAGGARD then claimed that PLAINTIFF was obstructing Governmental Administration.

168.   SWAGGARD said, "One more time, are you going to give your id to the officers to write you a ticket?" or words to that effect.

169.   PLAINTIFF asked, "On what crime did I commit?"

170.   Defendant SWAGGARD proclaimed, "Then it's done. Lock him up!" or words to that effect.

171.   While FEENEY was placing the handcuffs on the PLAINTIFF, the PLAINTIFF asked the reason why he was getting arrested.

172.   Defendant FEENEY then responded, "You're under arrest for 'gay bashing'." or words to that effect.

173.   PLAINTIFF responded, "Gay bashing?! That's not even a crime!"

174.   While SWAGGARD was recording the arrest from his phone, he stated, "Gay bashing is a hateful crime." or words to that effect.

175.   Upon arrest and search, FEENEY discovered that he (PLAINTIFF) had no id on his person.

176.   FEENEY then tried to turn off PLAINTIFF'S body camera.

177.   PLAINTIFF was then taken into custody in front of Defendant BONNER, the officer that initially informed PLAINTIFF that he (BONNER) understands that he (PLAINTIFF) was not breaking any laws.

178.   While handcuffed in the police car, SWAGGARD informed TIRADO, "Just put him down as "John Doe" and let him set there in jail for a few days," or words to that effect.

179.   The PLAINTIFF was then taken to the Erie County Holding Center for booking.

180.    While PLAINTIFF was locked up in the holding cell, Defendant TIRADO admits

to the book keepers on recording, "My thing is, if you don't like gay people, then keep

that shit to yourself. My sister's gay and I don't give a fuck. If you love me then I love

you and that's it." or words to that effect.

181.    Defendant TIRADO went on to say, "With this day in age, the only person that

could say something is God and when He's ready to do it, He'll do it. That's it!" or

words to that effect.

182.    While PLAINTIFF was locked up in the holding cell, Defendant TIRADO admits

to the book keepers on recording about the PLAINTIFF, "Fucking asshole, giving me

a hard time, I had enough of his crap." or words to that effect.

183.    After the book keeper identified the PLAINTIFF, TIRADO stated that he is going

to maliciously submit PLAINTIFF'S bull horn as "recovery" for evidence, so he

(PLAINTIFF) won't be able to take his property out that morning.

184.    After submitting the paper work for the PLAINTIFF'S bull horn for evidence,

Defendant TIRADO then suggested that the bookkeeper, after identifying the

PLAINTIFF, should "mess" or "taunt" with the PLAINTIFF while the PLAINTIFF

was in custody.

185.     The PLAINTIFF was held against his will, in the Holding Center from

approximately 8:22pm June 1, 2017 till about 1:22am June 2, 2017 the following

morning on an appearance ticket.


186.     The PLAINTIFF was maliciously charged under NYS Penal Law §195.05:

Obstructing Governmental Administration 2nd Degree, along with NYS Penal Law

§240.20(2): Disorderly Conduct – Unreasonable Noise, NYS Penal Law §240.20(4) –

Disturbance Lawful Assembly, NYS Penal Law §240.20(5): Disorderly Conduct –

Obstructing Traffic, and NYS Penal Law §240.26(3): Harassment – 2nd Degree.


187.     During the pretrial of criminal proceedings, the alleged charges recorded on

video, which resulted the unreasonable arrest, NYS Penal Law §195.05: Obstructing

Governmental Administration 2nd Degree and Harassment – 2nd Degree, were

dismissed in favor of the PLAINTIFF.


188.     After six months of malicious prosecution, in December of 2017 the remining

case was dismissed entirely in favor of the PLAINTIFF for failure to prosecute.


189.     Throughout the time of the PLAINTIFF'S encounter with all the Defendants

mentioned in Paragraphs numbered "2" through "4", the footage was captured by the

PLAINTIFF'S body camera as well as by a CITY OF BUFFALO surveillance camera posted on the corner of West Chippewa and Franklin Streets.

190.     For the PLAINTIFF safety, the PLAINTIFF uploaded his entire encounter on his YouTube account which is listed as "unlisted", which has never been released to the public in order to preserve all the data recorded from the time of his encounter to the time of his release.

191.     Defendants SWAGGARD and FEENEY'S video recordings were never brought up during the criminal court proceedings.

192.     Defendant CITY OF BUFFALO admitted during the pretrial conference, that Defendant BUFFALO POLICE had destroyed their video surveillance of the encounter 21 days after the event took place, while being told that the PLAINTIFF had to speak to Internal Affairs to file a complaint, Internal Affairs never answered the PLAINTIFF'S phone calls after several attempts to file a complaint.

## FIRST CAUSE OF ACTION

## AGAINST

## DEFENDANTS SWAGGARD, FEENEY, TIRADO, AND BONNER:

## HARASSMENT, FALSE ARREST, FALSE IMPRISONMENT, AND

## MALICIOUS PROSECUTION IN VIOLATION OF 42 U.S.C. § 1983

193.    That the PLAINTIFF, repeats, reiterates and realleges each allegation contained

and set forth in paragraphs marked and numbered "1" through "192", all inclusive of

this Complaint, with the same force and effect as though the same were more fully set

forth herein.

194.    That the conduct and actions of Defendants, FEENEY, TIRADO, AND

BONNER, while acting in concert and under the color of law, authorizing, directing

and or causing harassment to the PLAINTIFF, without justification by the improper,

impermissible and unprofessional use of authority in their official capacity, of which

Defendants, FEENEY, TIRADO, AND BONNER had:

    a.) Subjected Plaintiff to repeated and unjustified police contact with unwanted

        questioning and unlawful orders to stay away from public access, forbidding

        PLAINTIFF to freely open air preach within the public areas unmolested;

b.) Had clear and evil intentions to cause PLAINTIFF to deal with severe emotional distress by deliberately interfering with PLAINTIFF'S right in commencing to his guaranteed Constitutionally protected activities;

c.) Had a clear motive to exercise the use their authority, to conspire, to chill, and or eventually stop the PLAINTIFF from his activities which were Constitutionally protected;

d.) In fact, did subjected the PLAINTIFF to extreme emotional stress by their actions, after they've executed their authority to chill the PLAINITFF'S from his liberties that was protected under First, Fourth, and Fifth amendments of the Constitution and 42 U.S.C. §1983.

195.    The conduct and actions of Defendants, SWAGGARD, FEENEY, AND TIRADO, while acting in concert and under the color of law, authorizing, directing, and or causing, without justification by the improper, impermissible and unprofessional use of authority to execute, in their official capacity, the detention and arrest of the PLAINTIFF, in which Defendants, SWAGGARD, FEENEY, AND TIRADO had:

a.) Cause Plaintiff to be arrested, against his will, without either a legal warrant or exigent circumstances such as having reasonable, articulable suspicion and probable causes to justify their arrest;

b.) Had maliciously and callously falsified official documents in order to add more charges to justify their false arrest and prolong unreasonable prosecution against the PLAINTIFF;

c.) Had maliciously and callously falsified official documents in order to deprive the PLAINTIFF from his personal property during the protracted litigative proceedings;

d.) Cause PLAINTIFF to be confined, against his will, in the Erie County Holding Center overnight without any legal justification or factual necessity;

e.) Commenced the initiation and continuation of a baseless, unethical, and demoralizing criminal proceeding against PLAINTIFF, which all charges were dismissed in favor of the PLAINTIFF.

f.) Caused PLAINTIFF to endure emotional and financial costs of defending unjustifiable criminal charges, all in violation of Plaintiff's rights under 42 U.S.C. §1983, First, Fourth, and Fifth Amendments to the Constitution of the United States.

196.    As a result of Defendants SWAGGARD, FEENEY, TIRADO, AND BONNER'S illegal actions, they in fact exceeded their jurisdiction and as a result, the PLAINTIFF

suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of finances due to the loss of his rights.

## SECOND CAUSE OF ACTION

## AGAINST

## SWAGGARD, FEENEY, TIRADO, BONNER AND CARTER: BREACH OF FIDUCIARY DUTY IN VIOLATION OF THE FOURTH AMENDMENT OF THE CONSTITUTION AND VIOLATION OF 42 U.S.C. § 1983

197.    That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "196", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

198.    That the conduct and actions of Defendants, SWAGGARD, FEENEY, TIRADO, BONNER, AND CARTER while acting in concert and under the color of law, authorizing, directing, and causing a breach of fiduciary duty to the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in their official capacity, of which Defendants, SWAGGARD, FEENEY, TIRADO, BONNER, AND CARTER had:

a.) Made, under color of law, a sworn oath to the Public to protect and enforce the laws which guarantees the liberty for the Public, that was officially signed and documented, making Defendants SWAGGARD, FEENEY, TIRADO, BONNER, AND CARTER a Fiduciary to the Public, of which, the PLAINTIFF is as mentioned in paragraph numbered "1" part of the Public;

b.) Breached that oath by callously abusing their authority of violating the rights as mentioned in paragraphs numbered "1" through "196" of violating of freedom of religion, freedom of speech, false arrest, false imprisonment, intentionally falsifying documents for malicious prosecution, and commencing in malicious prosecution;

c.) Subjected the PLAINTIFF with financial and emotional injury due to the actions of the Defendants' breach of their fiduciary duty;

199.    As a result of Defendants SWAGGARD, FEENEY, TIRADO, BONNER, AND CARTER'S illegal actions, they in fact exceeded their jurisdiction and as a result, the PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, damage to his reputation, loss of standing in the community, and loss of finances due to the loss of his rights.

## THIRD CAUSE OF ACTION

## AGAINST

## SWAGGARD, FEENEY, AND TIRADO: FIRST AMENDMENT RETALIATION

## IN VIOLATION OF FIRST AMENDMENT UNDER FREEDOM OF SPEECH

## AND FREEDOM OF RELIGION AND VIOLATION OF 42 U.S.C. § 1983

200.    That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "199", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

201.    That the conduct and actions of Defendants, SWAGGARD, FEENEY, AND TIRADO, while acting in concert and under the color of law, authorizing, directing, and causing retaliatory infringement to the PLAINTIFF, without justification by the improper, impermissible and unprofessional use of authority in their official capacity, of which Defendants, SWAGGARD, FEENEY, AND TIRADO, had:

a.) Informed the PLAINTIFF that he was on public property, acknowledging with a clear understanding that the PLAINTIFF was engaging in lawful activity regarding his right to free speech and free exercise of religious expression;

b.)   Despite declaring that PLAINTIFF was free from any wrong doing, Defendants SWAGGARD, FEENEY, and TIRADO willfully executed their authority maliciously and deliberately, with disregard for the regard for the natural and probable consequences of their acts, which was done without lawful justification unlawful order the PLAINTIFF to stay away from public access, forbiting PLAINTIFF to freely open air preach within the public areas unmolested;

c.)   Notwithstanding the PLAINTIFF right to be heard, after acknowledging that the PLAINTIFF did in fact had the right to preach, The Defendants FEENEY and TIRADO, gave biased unlawful orders to "Keep it down, so you can't disturb the party" or orders to that effect to the PLAINTIFF, multiple times on multiple occasions, in intention to chill the PLAINTIFF from speaking freely;

d.)   With evil motive, Defendants SWAGGARD, FEENEY, AND TIRADO, in retaliation, selectively enforced their authority and judgment, by falsely stating that there was a city ordinance requirement of a permit to use a bullhorn, not allowing the Plaintiff use of his bullhorn at the same time allowing patrons from the bar to use theirs;

e.)   After being aware that the PLAINTIFF was in public access areas, with unlawful intentions, that Defendant FEENEY had deceptively stated that there was a city ordinance requirement of a permit to be at the corner of West Chippewa and Franklin Streets, while the under the presupposition that the patrons of the bar as

well as other citizens in the vicinity mentioned in paragraph "10 " , had had a permit, and that the PLAINTIFF didn't, in which FEENEY ordered the PLAINTIFF multiple times to leave otherwise he was getting a ticket;

f.) After knowing that the PLAINTIFF was in the public area, Defendant FEENEY and TIRADO, exploited their authority with bias, by giving PLAINTIFF suggestions to "join" the party and other gay pride events or leave the public area, despite having regard of the PLAINTIFF'S right to peacefully protest the event.

g.) In fact, threatened and coerced the PLAINTIFF without probable cause nor reasonable suspicion of a crime in progress, unlawfully gave the Plaintiff, an ultimatum to surrender his 4th and 5th amendment protection to have joinders with the SWAGGARD, FEENEY, TIRADO, and to get a ticket or be arrested of an ordinance violation, without any articulation that a crime was committed.

h.) In fact, abuse their authority by unlawfully arresting and detaining PLAINTIFF with false charges in attempt to justify their unreasonable behavior, afterwards, Defendant TIRADO, later admitting his bias against the PLAINTIFF as mentioned in paragraph numbered "180" that TIRADO'S sister is gay and that the PLAINTIFF should keep his religious beliefs to himself;

d.) After making aware of the PLAINTIFF'S reasoning of his peaceful protest, Defendant TIRADO, expressed his biased hatred toward of PLAINTIFF'S religious beliefs on official documentation, by stating that the PLAINTIFF was preaching words of "negativity" while using his authority and police powers to punish the PLAINTIFF, by falsifying those documents, in retaliation, of the PLAINTIFF'S peaceful protest in order to maliciously prosecute the PLAINTIFF.

202.    As a result of Defendants SWAGGARD, FEENEY, and TIRADO'S, illegal actions, they in fact exceeded their jurisdiction and as a result, the PLAINTIFF and his family suffered extreme emotional pain, suffering, humiliation, loss of enjoyment of life, loss of liberty, damage to his reputation, loss of standing in the community, and loss of liberty due to the loss of his rights.

## FOURTH CAUSE OF ACTION

## AGAINST

## SWAGGARD, BONNER, AND CARTER:

## SUPERVISORY LIABILITY IN VIOLATION OF

## 42 U.S.C. § 1983

203.    That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "l" through "202", all inclusive of

this complaint, with the same force and effect as though the same were more fully set forth herein.

204.    That Defendant, SWAGGARD was present at the scene in question on June 1, 2017 as the Buffalo Police supervising officer and lieutenant of all attending officers at the scene, That Defendant, SWAGGARD was negligent in his supervision of the attending Defendants FEENEY, TIRADO, BONNER, CARTER on or about June 1, 2017 in that he:

a.)   permitted said officers, their agents, servants and employees to use make the unlawful arrest of PLAINTIFF;

b.) Failed to discipline officers who used in securing and detaining, PLAINTIFF;

c.) tolerated the malicious behavior of defendant officer(s) who failed to follow proper procedure and care for the PLAINTIFF; and,

d.) Failed to enforce proper use of criteria or guidelines.

205.    That Defendant, SWAGGARD and officers involved in overseeing FEENEY AND TIRADO which were Defendants BONNER AND CARTER, were negligent in

his/their supervision of the attending Defendants FEENEY and TIRADO on or about June 1, 2017 in that he/they:

e.) permitted said officers, their agents, servants and employees to use make the arrest of PLAINTIFF unlawfully;

f.) Failed to discipline officers who used in securing and detaining, PLAINTIFF;

g.) tolerated the malicious behavior of defendant officer(s) who failed to follow proper procedure and care for the PLAINTIFF; and,

h.) Failed to enforce proper use of criteria or guidelines.

206.    By their conduct and under color of state law, it is believed Defendants BONNER AND CARTER as police officers, both had opportunities to intercede on behalf of PLAINTIFF, to prevent the authorizing, directing, and or causing of the duress and coercion, then ultimately, the arrest and unreasonable seizure but due to their intentional conduct and or deliberate indifference declined or refused to do so.

207.    Defendants BONNER and CARTER were officers in the immediate vicinity of the PLAINTIFF when Defendants, SWAGGARD, FEENEY, AND TIRADO, despite being educated numerous times of the law by the PLAINTIFF, did violate the rights

and liberties of the PLAINTIFF, of which BONNER and CARTER were aware the PLAINTIFF had been under duress and coercion, which ultimately resulted in his arrest and detention, as BONNER and CARTER witnessed up close and were aware the PLAINTIFF gone through emotional pain and suffering, as a result of SWAGGARD, FEENEY, AND TIRADO'S conduct, but took no action to provide or request relief for PLAINTIFF, disregarding the obvious risk to PLAINTIFF'S health.

208.     As a result of Defendants BONNER AND CARTER'S lack of relief, they in fact exceeded their jurisdiction and as a result, the PLAINTIFF suffered pain, suffering, humiliation, loss of enjoyment of life, loss of liberty, damage to his reputation, loss of standing in the community, loss of income, and loss of liberty due to the loss of his rights.

## FIFTH CAUSE OF ACTION

## AGAINST

## CITY OF BUFFALO AND BUFFALO POLICE: NEGLIGENCE IN VIOLATION

## OF

## 42 U.S.C. § 1983

209.     That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "l" through "208", all inclusive of

extreme mental anguish in connection with the loss of his constitutional rights guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States and laws of New York State.

## SIXTH CAUSE OF ACTION

## AGAINST

## SWAGGARD, FEENEY, TIRADO, BONNER, AND CARTER: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN VIOLATION OF 42 U.S.C. §1983

216.    That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "215", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

217.    That PLAINTIFF, continued to plead and beg to SWAGGARD, FEENEY, and

TIRADO to articulate and justify their threating and coercing, behavior towards him,

Defendants, SWAGGARD, FEENEY, and TIRADO continued to subject PLAINTIFF

with threat and coercion, while BONNER and CARTER watched with complicity.

218.    The PLAINTIFF even complained to SWAGGARD, about having his rights

infringed by threats and coercion from FEENEY, only to be threatened and coerced to

hand over his id even more so, which he informed TIRADO he didn't have, by

DEFENDANT SWAGGARD, ultimately to be placed in the back of a police cruiser in

hand cuffs after pleading for articulation from SWAGGARD.

219.    That the aforesaid conduct was done with the intention of causing PLAINTIFF

severe emotional distress.

220.    The PLAINTIFF was greatly injured both emotionally and mentally by use of

abuse and breach of fiduciary duty of Defendants' BUFFALO POLICE officers'

conduct through their various unlawful tactical misconduct through intimidation, with

intentions to inflict harm without justification by their improper, impermissible and

unprofessional use of authority over PLAINITIFF.

221.    That by reason of the foregoing actions of the Defendants, the PLAINTIFF, has

been caused to become sick, sore, and swollen, after preaching without his bull horn

the following Sunday during the Gay Pride Parade after losing his voice but also suffered emotionally anxious and distressed by the presence of law enforcement, being disabled from resuming his usual functions as a street preacher and was forced and compelled to heal in an effort to regain his voice from physical and emotional injuries.

222.    The PLAINTIFF was greatly injured both emotionally and mentally, being subject to humiliation, embarrassment and fright, causing anxiety and depression due to the loss of his rights from the Defendants exceeding their jurisdiction.

# SEVENTH CAUSE OF ACTION

## AGAINST

## BUFFALO POLICE AND CITY OF BUFFALO:

## RESPONDEAT SUPERIOR CLAIM IN VIOLATION OF 42 U.S.C. §1983

223.    That the PLAINTIFF, repeats, reiterates and realleges each allegation contained and set forth in paragraphs marked and numbered "1" through "222", all inclusive of this Complaint, with the same force and effect as though the same were more fully set forth herein.

224.    At all relevant times stated herein, Defendant CITY OF BUFFALO operated,

maintained, managed, supervised and controlled Defendant, BUFFALO POLICE

as part of and in conjunction with its municipal functions.

225.    At all relevant times stated herein, Defendant BUFFALO POLICE

DEPARTMENT managed, controlled and supervised its employees and officers of the

police department.

226.    At all relevant times stated herein, Defendants SWAGGARD, FEENEY,

TIRADO, BONNER, and CARTER were supervised employees and officers of

Defendant BUFFALO POLICE.

227.    At all relevant times stated herein, upon information and belief, Defendants

FEENEY, TIRADO, BONNER, CARTER, at the scene on or about June 1, 2017,

were graduates of the Buffalo Police Academy before being hired by the Defendant,

BUFFALO POLICE of Defendant, CITY OF BUFFALO.

228.    At all relevant times stated herein, Defendant CITY OF BUFFALO had the duty

to screen and investigate the backgrounds of the police officers they hire.

229.    At all relevant times stated herein, Defendant CITY OF BUFFALO had a duty to

competently and sufficiently train officers they hire and retain, both at its police academy and afterward to conform its conduct to a standard for the protection of individuals, such as Plaintiff, against the unreasonable risk of harm by conducting themselves in such a manner so as not to intentionally, wantonly and/or negligently inflict to citizens such as Plaintiff herein.

230.    At all relevant times stated herein, Defendant CITY OF BUFFALO had a duty to competently and sufficiently train at the command, precinct and patrol levels its officers, including Defendants FEENEY and TIRADO in the protection of the rights of citizens including the PLAINTIFF, under the United States Constitution.

231.    That Defendant, SWAGGARD was present at the scene in question on June 1, 2017 as the Buffalo Police supervising officer and lieutenant of all attending officers at the scene.

232.    That Defendants, SWAGGARD and BUFFALO POLICE DEPARTMENT were negligent in his/their supervision of the attending Defendants FEENEY, TIRADO, BONNER, CARTER on or about June 1, 2017 in that he/they:

a.)  permitted said officers, their agents, servants and employees to use make the arrest of PLAINTIFF;

b.)  Failed to discipline officers who used in securing and detaining, PLAINTIFF;

c.) Tolerated the malicious behavior of defendant officer(s) who failed to follow proper procedure and care for the PLAINTIFF; and,

d.) Failed to enforce proper use of criteria or guidelines.

e.) Defendants, CITY OF BUFFALO and BUFFALO POLICE were negligent hiring of the aforesaid agents, servants and/or employees in that they knew, or in the exercise of reasonable care should be known, that said agents, servants and/or employees of Defendant, CITY OF BUFFALO did not possess the temperament and psychological makeup to effect arrests and detain arrestees without the use of arbitrary punishment, and to otherwise properly carry out their duties as responsible and law abiding police officers.

f.) Defendant, CITY OF BUFFALO was negligent in the training of the aforesaid agents, servants and/or employees, in that they failed to train Defendants on proper use of authority, proper detention techniques and in the rights of the PLAINTIFF under the United States Constitution in general.

g.) Defendant, BUFFALO POLICE DEPARTMENT has been grossly negligent and negligent in the instruction and training they provide to their police officers with respect to their responsibilities to misconduct by other police officers.

h.) Defendant, BUFFALO POLICE DEPARTMENT has been on notice their continued responsibility in instructing and training in reporting misconduct by other police officers.

i.) Defendant, BUFFALO POLICE DEPARTMENT knew or should have known that their policies and practices have contributed to improper concealment of admissions by police officers and a "code of silence" being followed by police officers, to conceal misconduct by fellow officers.

j.) Defendant, BUFFALO POLICE DEPARTMENT knew or should have known that their policies and practices, as well as their grossly negligent and negligent supervision and training of officers, create an atmosphere where the most corrupt police officers felt assured that their most brazen acts of misconduct would not be swiftly and effectively investigated and prosecuted.

k.) The mistreatment and abuse of PLAINTIFF previously set forth, and the subsequent failed disclosure of those events under governed policy, were reasonably foreseeable results of the Defendants, BUFFALO POLICE DEPARTMENT, CITY OF BUFFALO, SWAGGARD, FEENEY, TIRADO, BONNER, and CARTER negligent conduct.

**WHEREFORE**, the Plaintiff, prays for judgment against the Defendants, in each of them in their individual capacity, on each and every cause of action jointly and severally, as follows:

a.)   on the First Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000); and/or

b.)   on the Second Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000); and/or

c.)   on the Third Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000); and/or

d.)   on the Fourth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000); and/or

e.)   on the Fifth Cause of Action in an amount that exceeds the jurisdictional limits of all lower courts, plus punitive damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000); and/or

f.)     on the Sixth Cause of Action in an amount that exceeds the jurisdictional

limits of all lower courts, plus punitive damages in the amount of TWO

HUNDRED FIFTY THOUSAND DOLLARS ($250,000); and/or

g.)     on the Seventh Cause of Action in an amount that exceeds the

jurisdictional limits of all lower courts, plus punitive damages in the amount

of FIVE HUNDRED THOUSAND DOLLARS ($500,000); and/or

h.)     together with the costs, disbursements, pursuant to 42 U.S.C. §1988 of this

action and for such other and further relief as the court may deem just and

proper.

Dated this 15th, of May 2019.

Joshua G. Harris
In Propria Persona

JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

19 CV 633

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS JOSHUA G. HARRIS

**DEFENDANTS**
LIEUTENANT MARK SWAGGARD, P.O. TOM FEENEY, P.O OMAR TIRADO, P.O J. BONNOR, P.O K. CARTER, BUFFALO POLICE DEPARTMENT, CITY OF BUFFALO

**(b)** County of Residence of First Listed Plaintiff      ERIE COUNTY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   ERIE COUNTY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION
OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys NONE

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

'1  U.S. Government
Plaintiff

'3X  Federal Question
*(U.S. Government Not a Party)*

'2  U.S. Government
Defendant

'4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*

*(For Diversity Cases Only)*                               *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X1 | X1 | Incorporated *or* Principal Place of Business In This State | '4 | '4 |
| Citizen of Another State | '2 | '2 | Incorporated *and* Principal Place of Business In Another State | '5 | '5 |
| Citizen or Subject of a Foreign Country | '3 | '3 | Foreign Nation | '6 | '6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*      Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| '110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | '625 Drug Related Seizure of Property 21 USC 881 | '422 Appeal 28 USC 158 | '375 False Claims Act |
| '120 Marine | '310 Airplane | '365 Personal Injury - Product Liability | '690 Other | '423 Withdrawal 28 USC 157 | '376 Qui Tam (31 USC 3729(a)) |
| '130 Miller Act | '315 Airplane Product Liability | '367 Health Care/ | | | '400 State Reapportionment |
| '140 Negotiable Instrument | '320 Assault, Libel & Injury | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | '410 Antitrust |
| '150 Recovery of Overpayment & Enforcement of Judgment | '330 Federal Employers' | | | '820 Copyrights | '430 Banks and Banking |
| '151 Medicare Act | Liability | Product Liability | | '830 Patent | '450 Commerce |
| '152 Recovery of Defaulted | '340 Marine | '368 Asbestos Personal | | '835 Patent - Abbreviated New Drug Application | '460 Deportation |
| Student Loans | '345 Marine Product Liability | Injury Product Liability | | '840 Trademark | '470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | | **PERSONAL PROPERTY** | | | '480 Consumer Credit |
| '153 Recovery of Overpayment of Veteran's Benefits | '350 Motor Vehicle | '370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | '485 Telephone Consumer Protection Act |
| '160 Stockholders' Suits | '355 Motor Vehicle Product Liability | '371 Truth in Lending | '710 Fair Labor Standards Act | '861 HIA (1395ff) | '490 Cable/Sat TV |
| '190 Other Contract | '360 Other Personal | '380 Other Personal Property Damage | '720 Labor/Management Relations | '862 Black Lung (923) | '850 Securities/Commodities/ Exchange |
| '195 Contract Product Liability | Injury | '385 Property Damage | '740 Railway Labor Act | '863 DIWC/DIWW (405(g)) | '890 Other Statutory Actions |
| '196 Franchise | '362 Personal Injury - Medical Malpractice | Product Liability | '751 Family and Medical Leave Act | '864 SSID Title XVI | '891 Agricultural Acts |
| | | | '790 Other Labor Litigation | '865 RSI (405(g)) | '893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | '791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | '895 Freedom of Information Act |
| '210 Land Condemnation | '440 Other Civil Rights X | **Habeas Corpus:** | | '870 Taxes (U.S. Plaintiff or Defendant) | '896 Arbitration |
| '220 Foreclosure | '441 Voting | '463 Alien Detainee | | '871 IRS—Third Party 26 USC 7609 | '899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| '230 Rent Lease & Ejectment | '442 Employment | '510 Motions to Vacate Sentence | | | |
| '240 Torts to Land | '443 Housing/ Accommodations | '530 General | | | '950 Constitutionality of State Statutes |
| '245 Tort Product Liability | '445 Amer. w/Disabilities Employment | '535 Death Penalty **Other:** | **IMMIGRATION** | | |
| '290 All Other Real Property | '446 Amer. w/Disabilities - Other | '540 Mandamus & Other | '462 Naturalization Application | | |
| | | '550 Civil Rights | '465 Other Immigration Actions | | |

| | 448 Education | 555 Prison Condition | |
| | | 560 Civil Detainee | |
| | | Conditions of | |
| | | Confinement | |

**V.   ORIGIN** *(Place an "X" in Box One Only)*

X′ 1 Original ′ 2 Removed from ′ 3 Remanded from ′ 4 Reinstated or ′ 5 Transferred from ′ 6 Multidistrict ′ 8  Multidistrict Proceeding State Court Appellate Court Reopened
Another District Litigation -   Litigation -

$2,400,000.00 *(specify)*                                                                                   Transfer                          Direct File

| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: |
| | Title 42 United States Code § 1983 |
| | Brief description of cause: |
| | Exceeded jurisdiction by injuring Plaintiff from the loss of Plaintiff's guaranteed rights. |

| **VII. REQUESTED IN COMPLAINT:** | ✓ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | **DEMAND $** 2,400,000.00 | CHECK YES only if demanded in complaint: **JURY DEMAND:**    ⟩ Yes   ⌐ No |

| **VIII. RELATED CASE(S) IF ANY** | *(See instructions):* | JUDGE | | DOCKET NUMBER | |

| DATE | | SIGNATURE OF ATTORNEY OF RECORD | |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |

JS 44 Reverse  (Rev. 02/19)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.** Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.   Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.   Origin.** Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.