UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSHUA G. HARRIS,

      Plaintiff,

    v.                                          19-CV-633-LJV-JJM
                                                DECISION & ORDER
MARK SWAGGARD, *et al.*,

      Defendants.

---

On May 15, 2019, the *pro se* plaintiff, Joshua G. Harris, commenced this action

asserting claims under 42 U.S.C. § 1983.  Docket Item 1.  On January 9, 2020, the case

was referred to United States Magistrate Judge Jeremiah J. McCarthy for all

proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 10.  On December 9,

2020, the defendants moved for summary judgment and for judgment on the pleadings.

Docket Item 25.  Harris responded on January 6, 2021, Docket Item 30, and the

defendants replied about a week later, Docket Item 32.

On September 21, 2021, Judge McCarthy issued a Report, Recommendation

and Order ("RR&O") finding that the defendants' motions should be granted in part and

denied in part.  Docket Item 48.  More specifically, Judge McCarthy recommended

allowing Harris's "supervisory liability" claim to proceed against defendant Mark

Swaggard and his malicious prosecution and First Amendment retaliation claims to

proceed against defendants Swaggard, Tom Feeney, and Omar Tirado and dismissing

Harris's other claims.  *See id.*

On October 6, 2021, the defendants objected to the RR&O, arguing that Judge McCarthy erred in determining that those claims should proceed and in finding that defendant Swaggard could be held liable as a supervisor.  Docket Item 49.  Two days later, Harris objected on the ground that Judge McCarthy erred in finding that his arrest was supported by arguable probable cause.  Docket Item 50.  Harris responded to the defendants' objections on November 2, 2021.  Docket Item 52.  The defendants did not reply to Harris's response or respond to Harris's objections, and the time to do so has expired.  *See* Docket Item 51.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the RR&O; the record in this case; the objections and response; and the materials submitted to Judge McCarthy. Based on that *de novo* review, the Court accepts Judge McCarthy's recommendation to grant the defendants' motions in part and deny those motions in part.[1]  Based on a recent Second Circuit decision, however, this Court agrees with the defendants that

---

[1] After Harris withdrew his section 1983 claims against defendant Keith Carter (named as "K. Carter" in the amended complaint), as well as his claims for breach of fiduciary duty, negligence, intentional infliction of emotional distress, and *respondeat superior*, *see* Docket Item 30 at 17, Judge McCarthy recommended dismissing those claims*, see* Docket Item 48 at 26.  Judge McCarthy also recommended dismissing all claims against defendant Joseph Bonner (named as "J. Bonnor" in the amended complaint), as well as Harris's harassment claim and any official capacity claims against the individual defendants.  *See id.*  Harris did not object to those recommendations, so this Court need not review them.  *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).  In any event, this Court agrees with Judge McCarthy that those claims should be dismissed.

2

Swaggard cannot be held liable as a supervisor and dismisses Harris's claims against him.

## FACTUAL BACKGROUND

On June 1, 2017, the "Pride Center of WNY held an event called the Gay 5K Run" at Soho, a restaurant and bar "located at the corner of [West] Chippewa and Franklin Streets" in downtown Buffalo.[2]  Docket Item 25-2 at ¶ 2; Docket Item 30 at 18-19.  After the conclusion of the race, Harris began "street preaching" outside the entrance of Soho "about the dangers of Hell to those who reject Jesus."  Docket Item 30 at 28-29.  Harris's preaching involved "stat[ing] that he was a man of God and that gay [and] lesbians [sic] would go to hell."  Docket Item 25-5.

Buffalo police officers Bonner and Carter approached Harris and "inquire[d] what was going on."  Docket Item 25-2 at ¶¶ 3-6; Docket Item 30 at 19.  After Harris "refused to answer" questions, the officers left.  Docket Item 25-2 at ¶¶ 7-8; Docket Item 30 at 19.  Other officers then received a 911 call and responded to the same location.  Docket Item 25-2 at ¶ 9; Docket Item 30 at 20.  Officers Tirado and Feeney "observed [Harris] to be utilizing a megaphone to direct comments towards patrons and event attendees at Soho."  Docket Item 25-2 at ¶ 10.  Swaggard, a lieutenant "act[ing] as a supervisor for patrol officers in the B District," arrived on the scene after Tirado and Feeney.  Docket

---

[2] The Court assumes familiarity with the facts set forth in the RR&O, *see* Docket Item 48 at 2-6, and sets forth a brief recitation of the facts from the defendants' statement of undisputed material facts, Docket Item 25-2; Harris's statement of undisputed material facts in opposition, Docket Item 30 at 18-22; and the exhibits incorporated into those filings.  On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

Item 25-10 at ¶¶ 3, 6.  All the while, Harris and the officers had an extended dispute about the scope of Harris's First Amendment rights and the legality of the officers' actions.  *See generally* Docket Item 30, Exhibits C and D.

Harris ultimately was arrested after he refused to accede to the officers' requests to move and to provide identification.  *See* Docket Item 25-10 at ¶ 14; Docket Item 25-9 at ¶ 12; Docket Item 25-8 at ¶ 13.  He then was transported by Tirado and Feeney to central booking for processing.  *See* Docket Item 25-8 at ¶ 15; Docket Item 25-9 at ¶ 13. Feeney obtained a supporting deposition from Justin Azzarella, the event organizer, who recounted that Harris "rais[ed] his voice while using a megaphone to intimidate and offend [event] participants."  Docket Item 25-5.

Harris was charged with obstructing governmental administration in the second degree in violation of New York Penal Law § 195.05; second-degree harassment in violation of New York Penal Law § 240.26(3); and disorderly conduct in violation of New York Penal Law §§ 240.20(2), (4), and (5).  Docket Item 25-4 at 2-4.  He received an appearance ticket on June 2, 2017, and was released.  *Id.* at 5; Docket Item 30 at 31. According to Harris, "[a]ll charges were dropped in [his] favor."  Docket Item 30 at 22.

## LEGAL PRINCIPLES

### I.    SUMMARY JUDGMENT

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Soto v. Gaudet*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).  "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' *i.e.*, 'it is quite clear what the truth is,' and no rational

factfinder could find in favor of the nonmovant."  *Id.*  (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); then quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962)).  Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party."  *Id.*  "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence."  *Id.*  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255.

## II.    JUDGMENT ON THE PLEADINGS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard for deciding a Rule 12(c) motion is "the same . . . standard [that applies] to dismissals pursuant to [Rule] 12(b)(6).  Thus, [courts] will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [the plaintiff's] favor."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

5

**DISCUSSION**

## I.     FALSE ARREST/FALSE IMPRISONMENT

"An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Betts v. Sherman*, 751 F.3d 78, 82 (2d Cir. 2014) (citation omitted).

Judge McCarthy recommended dismissing Harris's false arrest claim because his arrest was supported by arguable probable cause and the individual officer defendants therefore are entitled to qualified immunity.[3] *See* Docket Item 48 at 16. More specifically, Judge McCarthy concluded that the officers had arguable probable cause to arrest Harris at least for disorderly conduct for making unreasonable noise and

---

[3] Like Judge McCarthy, this Court addresses Harris's false arrest/false imprisonment claims together.  *See Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007) ("False arrest is simply false imprisonment accomplished by means of an unlawful arrest.  False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest."  (citation and internal quotation marks omitted)).

6

disturbing a lawful assembly under New York Penal Law § 240.20(2) and (4).[4]  *See id.* at 13-16.  In reaching that conclusion, Judge McCarthy noted that the plaintiff himself acknowledged "irritat[ing]" the restaurant patrons who heard him when he used a megaphone to speak loudly right outside the restaurant.  *See id.* at 16.

Judge McCarthy relied on *Adams v. City of New York*, 226 F. Supp. 3d 261 (S.D.N.Y. 2016).  There, the plaintiff, who had been protesting at the site of a planned demolition in a "louder than [] usual voice," was charged with violating New York Penal Law §§ 240.20(2) and (4); the court noted that the officers who "arriv[ed] at the location of the protest [after a] noise complaint[] . . .  had the opportunity to listen to him chant before and during his arrest."  *Id.* at 264, 268.  Citing the noise complaint and the officers' personal observations, the *Adams* court concluded that the arresting officers were entitled to qualified immunity because "officers of reasonable competence could disagree as to whether the volume was unreasonable."  *Id.* at 268.

Harris argues that *Adams* is distinguishable because "[y]elling chants in front of a church during worship hours on a Sunday" is "completely different from preaching in front of a bar on a Thursday night."  Docket Item 50 at 6.  But the difference on which Harris relies is legally insignificant and this Court agrees with Judge McCarthy that the arresting officers had arguable probable cause to arrest Harris for violating New York

---

[4] Harris generally objects to Judge McCarthy's recommendation that his false arrest claim be dismissed, *see* Docket Item 50, but he focuses primarily on whether he was making unreasonable noise and not on whether he disturbed a lawful assembly—namely, the event at the Soho bar.  In any event, this Court agrees that the officers had arguable probable cause to arrest on this charge:  Multiple patrons "appeared to be visibly disturbed" by Harris's conduct and "complained [to Feeney] that they found [Harris's] conduct to be disturbing."  Docket Item 25-9 at ¶ 9; *see also* Docket Item 25-8 at ¶ 10.

Penal Law § 240.20(2).[5]  Indeed, Harris does not dispute that he was using a bullhorn

to amplify his speech close to the restaurant.[6]  And while Harris apparently contends

that pointing his bullhorn at the ground made his noise reasonable, *see* Docket Item 50

at 9, this Court cannot conclude that the direction where the bullhorn was pointed

renders the probable cause determination objectively unreasonable or suggests that

officers of reasonable competence could not disagree about whether there was

probable cause.[7]

---

[5] To the extent that Harris objects to Judge McCarthy's conclusion that the officers had arguable probable cause to conclude that the other elements of New York Penal Law § 240.20 were satisfied, this Court again agrees with Judge McCarthy. Harris does not dispute that his conduct was "public in nature," and he acknowledges that the people at the bar "were irate"—even if he disputes whether the volume of his speech "irritate[d]" them.  *See* Docket Item 50 at 7.

[6] Harris apparently contends that using a bullhorn is *per se* lawful, relying on *Saia v. New York*, 334 U.S. 558 (1948).  But *Saia*, which invalidated a local ordinance banning any amplification device absent a permit from the chief of police, is distinguishable.  There, the Supreme Court concluded that the ordinance, which placed "uncontrolled discretion" in the chief of police to award permits for amplification devices, was an invalid prior restraint on speech.  *See id.* at 560-61.  New York Penal Law § 240.20, by contrast, does not generally bar any use of an amplification device absent a permit, and it therefore falls outside the sort of prior restraint invalidated in *Saia*.

[7] Harris also argues that police officers lacked probable cause to arrest him because they did not "properly appl[y]" the decibel measurement necessary to determine that he was making unreasonable noise.  Docket Item 50 at 8.  He contends that the officers were required to follow a local Buffalo ordinance, which sets forth certain decibel guidelines for unreasonable noise, before arresting him.  *See* Buffalo, N.Y., Ordinance § 293-3.  But Harris was charged under New York Penal Law § 240.20(2), which prohibits "noise of a type or volume that a reasonable person, under the circumstances, would not tolerate."  *See Provost v. City of Newburgh*, 262 F.3d 146, 159 (2d Cir. 2001) (quoting *People v. Bakolas*, 59 N.Y.2d 51, 53, 449 N.E.2d 738, 740 (1983)).  So the officers' apparent failure to satisfy the requirements of the City of Buffalo ordinance does not affect whether his arrest under a separate statute, New York Penal Law § 240.20(2), was supported by arguable probable cause.

Harris also argues that probable cause was lacking because the "arresting officers had a clear bias [] in his arrest." *Id.* at 10.  But "[i]n the Fourth Amendment context, [] '[the Supreme Court] ha[s] almost uniformly rejected invitations to probe subjective intent.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011)).  So "when [a court] review[s] an arrest, [it] ask[s] 'whether the circumstances, viewed objectively, justify the challenged action,' and if so, conclude[s] 'that [the] action was reasonable *whatever* the subjective intent motivating the relevant officials.'" *Id.* at 1725 (emphasis in original) (alterations omitted) (quoting *al-Kidd*, 563 U.S. at 736)).  Here, there was arguable probable cause to conclude at least that Harris committed disorderly conduct by making unreasonable noise.  And that finding precludes Harris's false arrest claim against defendants Swaggard, Feeney, and Tirado.  *See Oprea v. White*, 2018 WL 1580335, at *5 (S.D.N.Y. Mar. 28, 2018) (declining to consider whether "probable cause in fact existed for an arrest . . . for any of the [] crimes for which [the plaintiff] was arrested" after "find[ing] that [the defendant officer] is entitled to qualified immunity on the basis that it was reasonable to arrest [the plaintiff]").

## II.  MALICIOUS PROSECUTION

"A police officer has qualified immunity from a malicious prosecution claim if the officer had 'arguable probable cause' to charge the plaintiff with the crimes at issue." *See Tompkins v. City of New York*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) (citing *Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order)).  "'The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases' and requires 'such facts and circumstances as would

9

lead a reasonably prudent person to believe the plaintiff guilty.'"  *Spagnuolo v. Howell*, 814 F. App'x 614, 617 (2d Cir. 2020) (summary order) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013)).

### A.    Obstruction of Governmental Administration

Judge McCarthy concluded that the defendants did not have arguable probable cause to charge Harris with obstruction of governmental administration under New York Penal Law § 195.05 because Harris's refusal to provide pedigree information or answer booking questions is not a "physical interference" under section 195.05.  *See* Docket Item 48 at 18-21.  The defendants concede that physical interference is required under New York Penal Law § 195.05, but they argue that arguable probable cause supports the charge because Harris was "charged with frustrating police activity, which is the conduct that the legislature specifically intended to prohibit" under New York Penal Law § 195.05.  Docket Item 49 at 3.

"If officers of reasonable competence would have to agree that the information possessed by the officer . . . did not add up to probable cause," however, "the fact that it came close does not immunize the officer."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).  And the defendants do not dispute that "refusal to respond to an officer's questions cannot satisfy the 'interference' element of the charge for obstruction of governmental administration."  *Uzoukwu v. City of New York*, 805 F.3d 409, 415 (2d Cir. 2015).  So without that physical interference, this Court—like Judge McCarthy— cannot conclude that it was objectively reasonable to believe that there was probable cause to charge Harris under New York Penal Law § 195.05 or that reasonable officers could disagree about that.  *See Ackerson*, 702 F.3d at 21 (reversing decision granting

qualified immunity because "officers of reasonable competence could not disagree over whether probable cause existed without [a] crucial element" of the charged offense).

### B.    Disorderly Conduct

After Judge McCarthy concluded that the obstruction of governmental administration charge was not supported by arguable probable cause, he did not separately consider the remaining charges against Harris.  But because the court must "separately analyze the charges claimed to have been maliciously prosecuted," this Court considers whether probable cause or arguable probable cause supported the remaining charges under New York Penal Law §§ 240.26 (second-degree harassment) and 240.20 (disorderly conduct).  *See Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 536 (S.D.N.Y. 2015) (quoting *Johnson v. New York City*, 2013 WL 950870, at *1 (S.D.N.Y. Mar. 7, 2013)).

As set forth above, this Court agrees with Judge McCarthy that Harris's arrest for disorderly conduct under New York Penal Law §§ 240.20(2) (making unreasonable noise) and (4) (disturbing a lawful assembly) was supported by arguable probable cause.  Although Harris notes that the officers made a number of comments about the content of his speech after he was arrested, *see, e.g.*, Docket Item 50 at 10, he does not suggest that arguable probable cause for his disorderly conduct arrest under New York Penal Law §§ 240(2) or (4) dissipated prior to being charged.  Because arguable "probable cause existed at the time of the arrest and [Harris] offers no additional facts to show that it dissipated post-arrest," his malicious prosecution claim for the charges under New York Penal Law § 240.20(2) and (4) "cannot be maintained."  *Jimenez v. City of New York*, 2016 WL 1092617, at *4 (E.D.N.Y. Mar. 21, 2016); *see also Keith v.*

11

*City of New York*, 641 F. App'x 63, 67 (2d Cir. 2016) (summary order) ("[A] finding that the officers had arguable probable cause to arrest [] necessarily entitles the defendants to qualified immunity on [a] malicious prosecution claim as well unless [the plaintiff] can identify some fact . . . that was sufficient to 'dissipate' the probable cause that existed at the time of his putative arrest."  (citations omitted)).

This Court cannot conclude, however, that the charge for obstructing pedestrian traffic was supported by arguable probable cause.  Under New York Penal Law § 240.20(5), "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[,] [h]e obstructs vehicular or pedestrian traffic."  *Id.*  "New York courts have interpreted this statute to permit punishment only where the conduct at issue does more than merely inconvenience pedestrian or vehicular traffic."  *See Jones v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006) (collecting cases).  Although the defendants maintain that Harris "obstructed the path of patrons entering and exiting the bar," *see, e.g.*, Docket Item 25-8 at ¶ 10, Harris claims that he "never stood in a manner that [] would obstruct anyone's path . . . entering and exiting the bar," Docket Item 30 at 19.  Nor does Harris's video footage settle whether he was "more than merely inconvenienc[ing] pedestrian . . . traffic."  *Jones*, 465 F.3d at 59.

Because the question of whether officers had arguable (or actual) probable cause to charge Harris under New York Penal Law § 240.20(5) hinges on disputed facts, this Court cannot conclude that the defendants are entitled to summary judgment on this malicious prosecution claim.

C.      **Second-Degree Harassment**

Finally, Harris was charged with harassment under New York Penal Law

§ 240.26(3).  Under that statute, a person is guilty of second-degree harassment "when,

with intent to harass, annoy or alarm another person[,] [h]e or she engages in a course

of conduct or repeatedly commits acts which alarm or seriously annoy such other

person and which serve no legitimate purpose."  N.Y. Penal Law § 240.26(3).  "It must

involve more than a single, isolated incident."  *Oprea*, 2018 WL 1580335, at *4.

At the outset, the Court notes that Harris has not brought a First Amendment

challenge—either facial or as applied—to New York's second-degree harassment

statute.  So the question of whether there was arguable probable cause to charge

Harris with second-degree harassment hinges on whether the charging decision was

objectively unreasonable or whether officers of reasonable competence could disagree

about whether probable cause existed.[8]  Here, Harris was charged with harassment for

"us[ing] a megaphone to tell participants of the Gay Pride 5K that he was a man of God

and that gay and lesbians [sic] would go to hell."  Docket Item 25-4 at 3; *see also*

Docket Item 25-8 at ¶ 14 ("[Harris] was charged with [second-degree harassment] for

engaging in a course of conduct which caused annoyance and alarm to patrons who

---

[8] The Court notes that in some circumstances, an officer may lack probable cause to arrest an individual who engages in constitutionally protected speech.  *See Provost*, 262 F.3d at 159-60.  On the other hand, "state officials are entitled to rely on a presumptively valid state statute until and unless the statute is declared unconstitutional," except when a law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws."  *Vives v. City of New York*, 405 F.3d 115, 117 (2d Cir. 2005) (alterations and citation omitted). Whatever the possible faults of New York Penal Law § 240.26(3) under the First Amendment, this Court has not found a decision that would undermine the officers' reliance on its validity here.

complained that [he] blocked the sidewalk in close vicinity of the Soho entrance while using a megaphone to make disparaging comments regarding Soho patrons attending a Gay Pride event.")  And the event organizer swore in a deposition that Harris's conduct made the Soho patrons "afraid, intimidated [and] fearful" and caused some to leave "due to fear."  Docket Item 25-5.

On those facts, it was not unreasonable to charge Harris with violating New York Penal Law § 240.26(3).  *See Oprea*, 2018 WL 1580335, at *4 (finding officer's probable cause determination not unreasonable where the plaintiff not only engaged in protest activity but also made a security guard "alarmed for the safety of the building owner's wife and daughters").  Harris was standing very near the bar and restaurant, and he was using a bullhorn to amplify speech toward its patrons.  So while the "totality of the circumstances certainly includes [Harris's] legitimate, First Amendment-protected activity, it was not unreasonable" for the officers to view his actions as "sufficiently separate from the lawful protests such that they 'served no legitimate purpose' and instead reflected an 'intent to harass, annoy or alarm.'"  *Id.* (alterations omitted) (quoting N.Y. Penal Law § 240.26(3)).  Therefore, insofar as Harris's malicious prosecution claim is based on the harassment charge, it is dismissed.

### III.   FIRST AMENDMENT RETALIATION

Judge McCarthy concluded that Harris's First Amendment retaliation claim should survive because arguable probable cause was lacking for some of the charges against Harris.  *See* Docket Item 48 at 22-23.  The defendants continue to maintain that Harris's First Amendment retaliation claim should be dismissed because his arrest and prosecution at least were supported by arguable probable cause.  *See* Docket Item 49

at 6-7.  But because this Court agrees that not all of the charges against Harris were supported by arguable probable cause, the defendants' objection to the RR&O on this ground fails for the same reasons stated by Judge McCarthy.[9]

## IV.    SUPERVISORY LIABILITY

Finally, the defendants contend that Harris's "supervisory liability" claim against Swaggard must be dismissed.  *Id.* at 7-8.  Judge McCarthy recommended that Harris's supervisory liability claim against Swaggard survive because "Swaggard was the supervisor of the officers involved in [Harris's] arrest."  Docket Item 48 at 24.

But after the Second Circuit's recent decision in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.* at 616. In other words, a plaintiff no longer can hold a supervisor liable under section 1983 using the standard cited in *Guillory v. Cuomo*, 616 F. App'x 12 (2d Cir. 2015) (summary order), the case relied on in the RR&O.  *See* Docket Item 48 at 23-24.

Here, Swaggard was involved in the decision to arrest Harris, but he played no role in charging him.  *See* Docket Item 25-10.  Because the false arrest claim has been dismissed against all defendants, Harris's only surviving claims against Swaggard are

---

[9] The defendants also argue that "[a]t a minimum[] [Harris's] retaliatory arrest claim should be dismissed based on the [RR&O's] finding that arguable probable cause existed to arrest [Harris]."  Docket Item 49 at 7.  This Court agrees.  A showing of "probable cause should generally defeat a retaliatory arrest claim."  *Nieves*, 139 S. Ct. at 1727; *see also Pinto v. City of New York*, 728 F. App'x 26, 31 (2d Cir. 2018) (summary order) ("The existence of arguable probable cause entitles [the officer] to qualified immunity on [a] § 1983 claim[] for . . . First Amendment retaliation . . . .").  And as Judge McCarthy noted, no exception to that general rule applies here.  *See* Docket Item 48 at 22 n.12.  Because Harris's arrest was supported by arguable probable cause, his retaliatory arrest claim likewise fails.

for malicious prosecution and retaliatory prosecution.  But because Swaggard played no role in charging or prosecuting Harris, there is no viable malicious prosecution or retaliatory prosecution claim against him.  Swaggard's lack of personal involvement in that conduct therefore bars Harris's claims against him here.[10]  *See Pierre v. Rocco*, 2021 WL 950021, at *3 (E.D.N.Y. Mar. 12, 2021) (noting that "[i]t has long been settled that participation in [an] arrest, without more, is insufficient to establish the requisite initiation" for a malicious prosecution claim).

## CONCLUSION

For the reasons stated above and in the RR&O, the defendants' motions for summary judgment and judgment on the pleadings, Docket Item 25, are GRANTED in part and DENIED in part.  More specifically, Harris's malicious prosecution and First Amendment retaliation claims against defendants Feeney and Tirado may proceed; his remaining claims are dismissed.  The Clerk of the Court shall terminate defendants Swaggard, Bonnor, Carter, Buffalo Police Department, and City of Buffalo from this action.  **The parties shall contact the Court within 30 days of the date of this order to schedule a status conference so that the Court can set a trial date.**

---

[10] For that reason, Harris's malicious prosecution and First Amendment retaliation claims against Swaggard both are dismissed.

16

SO ORDERED.

Dated:        February 24, 2022
              Buffalo, New York


                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE